UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAIQUAN K. FALLS, :
            Plaintiff, :
:
v. :
: **OPINION AND ORDER**
MYRA RUDE; TREVOR LORD; JONATHAN :
SAINTICHE; WILLIAM ANDERSON; CHRIS : 17 CV 1339 (VB)
TABACHNICK; ROMAN SCUADRONI; :
PATRICK BLOOMER; CARLOS CANARIO; :
RICARDO RIVERA; JEFFREY PEREZ; and :
JOHN THOMAS, :
            Defendants. :
------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Raiquan K. Falls, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, against defendants Officers Myra Rude, Trevor Lord, Jonathan Saintiche, Chris Tabachnick, Roman Scuadroni, Patrick Bloomer, Carlos Canario, Ricardo Rivera, Jeffrey Perez, and John Thomas; and Sergeant ("Sgt.") William Anderson for excessive force, failure to intervene, and false arrest, in connection with plaintiff's September 28, 2015, arrest, detention, and alleged strip search.

      Now pending is defendants' motion for summary judgment. (Doc. #106).

      For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      The parties have submitted briefs, statements of material facts, supporting affidavits, declarations, and exhibits, which reflect the following factual background.

1

A.   Police Officers' Accounts of Plaintiff's Arrest

Around 5:14 p.m., on September 28, 2015, police officers were dispatched to the area of 13 Hasbrouck Street in Newburgh, New York, after Jasmine Griffen reported to the police that she had been threatened by a man with a gun. The suspect was reportedly traveling on foot through backyards across the street from 21 Hasbrouck Street. Officers' subsequent incident reports contain different descriptions of the suspect. According to Officer Rude's and Saintiche's incident reports, communications personnel described the suspect to the responding officers as "a black male, wearing no shirt with black and red camouflage shorts and braids." (Doc. #109 ("Posner Aff.") Ex. D ("Police Reports") at 3, 9).[1] Officer Canario's incident report states the suspect was described as a "black male wearing red camouflage pants and in possession of a handgun." (Id. at 6) (emphasis added).

The responding officers set up a perimeter attempting to keep the suspect in the backyards. Sgt. Anderson saw a suspect who matched the description given to him running through the backyards and climbing fences and radioed describing the suspect's direction of travel. Officer Canario was near 28 Hasbrouck Street when he heard Sgt. Anderson's radio transmission. Canario rushed toward Sgt. Anderson's location, where he heard the suspect drop his phone. Canario climbed the fence and saw the suspect heading northbound through the fences.

Meanwhile, Officers Rude and Saintiche responded to the area of West Parmenter Street—which is parallel to and one block away from Hasbrouck Street—and were checking backyards when Rude "observed a black male matching the description of the suspect," whom

---

[1]   Citations to the Police Reports refer to the red page numbers on the bottom-right corner of each page; citations to plaintiff's deposition (Posner Aff. Ex. C ("Pl. Dep.")) refer to the page numbers in the upper-right corner of each page.

she knew to be plaintiff. (Police Reports at 3–4). Rude identified herself as a police officer and told plaintiff to stop. Rude chased plaintiff until plaintiff attempted to jump another fence and fell to the ground, at which point Saintiche apprehended plaintiff without further incident.

Officers Lord, Bloomer, Canario, Anderson, Tabachnick, and Perez state they helped form the perimeter to contain plaintiff, but did not have any contact with plaintiff or otherwise participate in his arrest.

B.  Plaintiff's Account of His Arrest

Plaintiff states he was hanging out in front of the corner store at the intersection of Hasbrouck and William Streets with his twin brother and several friends. Plaintiff testified at his deposition he owns a pair of all-red camouflage shorts, but is not sure whether he was wearing those shorts at the time. Indeed, plaintiff testified he does not recall whether he was wearing pants or shorts and was wearing a shirt, but "by the time of the incident was done and over with, I was probably shirtless." (Pl. Dep. at 31). In plaintiff's Rule 56.1 Statement, however, plaintiff states he was dressed "in a plain black T-shirt and dark navy blue pants." (Pl. Rule 56.1 Statement ¶¶ 10–11).[2]

Plaintiff, his brother, and his friends separated when they observed a police car. Plaintiff ran up Hasbrouck Street to his friend's front porch and made his way to the house's back porch and backyard. While standing on his friend's porch, he saw several police officers surrounding the area with their weapons drawn. He then "slowly walked towards the alleyway leading to the

---

[2]  The Court refers to the paragraph numbers in plaintiff's Rule 56.1 Statement ("Pl. Rule 56.1 Statement") and declaration in opposition to the motion for summary judgment ("Pl. Decl."), both of which are contained in ECF Doc. #125—Pl. Rule 56.1 Statement at ECF pages 1, 3, 5, 7, and 9, and Pl. Decl. at ECF pages 27 and 93. In addition, the Court has altered capitalizations in those documents without further indication.

3

exit of the backyard onto Hasbrouck Street," and did not hear voices commanding him to stop. (Pl. Decl. ¶ 13). The police located plaintiff in the backyard of 34 Hasbrouck Street.

As plaintiff proceeded to the alleyway, Officers Saintiche and Lord "came from that direction without warning and forcefully slammed me onto the ground causing my rib cage along with the bones in my chest to crash into the concrete ground." (Pl. Decl. ¶ 14). Plaintiff states he was arrested in the backyard of 34 Hasbrouck Street, and was "completely compliant" and "did not resist arrest." (Id. ¶ 16). Plaintiff says Saintiche and Lord immediately handcuffed him, then punched and kneed him in his ribs, stomach, chest, and thighs, about ten times. According to plaintiff's declaration, seconds later Officers Rude, Anderson, Canario, Tabachnick, Bloomer, and Perez joined in punching and kneeing him. (Id. ¶ 15). However, plaintiff testified at his earlier deposition that he was not sure who had hit him. (Pl. Dep. at 26).

According to plaintiff, after about a minute, a few officers stepped away to search for weapons and contraband, but the other officers continued to beat plaintiff for two to three more minutes. At plaintiff's deposition, plaintiff testified he was hit no more than ten times; plaintiff states in his subsequent declaration, however, that he was punched and kneed in the upper body about twenty times.

C. Injuries

In plaintiff's amended complaint, plaintiff states he sustained "minor injures such as scratches [and] bruises around my ribs." (Doc. #28 ("Am. Compl.") at 5) (capitalizations altered). In an August 15, 2018, letter to the Court, plaintiff described his injuries as "de minimis" and "minor" (Doc. #101); plaintiff also agreed in his Rule 56.1 Statement that he had described his injuries as de minimis and minor (Pl. Rule 56.1 Statement ¶ 43). Further, plaintiff provided the following interrogatory responses:

4

1. State if plaintiff sustained injuries when arrested on September 28, 2017 [sic].

   No, plaintiff did not sustain any injuries. But was beaten by several police officers on September 28th (2015).

2. If the answer to Interrogatory No. 1 is "Yes," state the nature of those injuries and identify if plaintiff received medical attention for those injuries and if so, state where plaintiff received medical attention.

   N/A No injuries.

(Posner Aff. Ex. H at 3) (capitalizations altered). Plaintiff testified at his deposition that he interpreted "injuries" as "major injuries," such as "broken bones." (Pl. Dep. at 31).

Plaintiff further testified at his deposition he did not suffer any bone fractures and was not bleeding. Plaintiff also testified he "had scrapes everywhere" and "bruises," but they were "[n]othing to talk about." (Pl. Dep. at 29, 33). According to plaintiff, "[s]crapes and bruises [are] like nothing to me." (Id. at 32). Plaintiff testified he did not show anybody the scrapes or bruises, nor does he have photographs of them.

Plaintiff states his scrapes and bruises were no longer visible by the time he was able to seek medical treatment, and although he was in pain, he did not believe he suffered from any broken bones and therefore did not seek to be examined. Plaintiff also claims he suffered mental anguish and pain and suffering.

D. Victim Interview

According to Rude's incident report, after she transported plaintiff to the police station, she attempted to bring Jasmine Griffen, the victim, in for an interview. Rude spoke with Griffen, "who was in tears and highly upset." (Police Reports at 4). Her parents were with her and advising her not to talk to the police for fear of retribution. Griffen was not sure she wanted to

5

talk because she believed the suspect would kill her, but provided Rude with a brief description of what had occurred prior to her calling the police.

Rude states in her incident report that Griffen accompanied Rude to the police station, where she sat with Detective Pitt but continued to receive phone calls from her boyfriend and parents; her parents continued to advise her not to speak with the police. Ultimately, according to Rude's incident report, Griffen refused to speak with Pitt "out of fear of retribution to her, her boyfriend, and her unborn child." (Police Reports at 4). According to Pitt's incident report, Griffen refused to sign a statement or file a complaint against plaintiff for menacing her.

E. <u>K-9 Search of 34 Hasbrouck Street</u>

While Rude and Pitt were attempting to question Griffen, Officer Rivera and his K-9 partner Bane, and Officer Scuadroni and his K-9 partner Lee, searched the area of 34 Hasbrouck Street for the gun Griffen had reported. Bane recovered a black Colt Detective Special caliber .38 Special bearing serial number C10655, loaded with five rounds, underneath the back porch of 34 Hasbrouck Street. The police were not able to match DNA from the gun to plaintiff.

F. <u>Strip Search and Arraignment</u>

According to plaintiff, he was taken to the police station, where he was fingerprinted and strip searched. However, a "Strip Search Report" included in the Police Reports states plaintiff was not strip searched. (Police Reports at 16). Rude also states there was no strip search as this was not a drug arrest. Sgt. Anderson likewise says plaintiff was not subject to a strip search, explaining his (Sgt. Anderson's) permission would have been required for a strip search and he would not have given permission in the circumstances under which plaintiff was arrested. Moreover, defendants assert Newburgh Police Department policy prohibits a strip search unless there is a reasonable suspicion the arrestee is concealing drugs or contraband.

Plaintiff was held at the police station on charges of resisting arrest and obstructing governmental administration. Plaintiff was arraigned the next morning and remanded to the Orange County Jail. On October 14, 2015, plaintiff was indicted on felony drug sale charges. On March 7, 2016, the Newburgh City Court dismissed by adjournment in contemplation of dismissal plaintiff's resisting arrest and obstructing governmental administration charges arising from his September 28, 2015, arrest.

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.  Excessive Force Claim

Defendants argue the Court should grant summary judgment dismissing plaintiff's excessive force claim because plaintiff admitted that his injury was de minimis.

The Court disagrees.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'" Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399) (citations omitted). Therefore, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d at 96. This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396. It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).

Because police officers often must use some degree of force when arresting or otherwise lawfully "seizing" an individual, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. at 396 (internal quotation omitted). Thus, a plaintiff generally must prove he sustained some injury to prevail on an excessive force claim. McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 699 (S.D.N.Y. 1999); see also Landy v. Irizarry, 884 F. Supp. 788, 798 n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim.").

9

However, the injury need not be severe.  See Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").  Indeed, the Second Circuit has permitted claims to survive summary judgment when the only injury alleged is bruising.  Hayes v. N.Y.C. Police Dep't, 212 F. App'x 60, 62 (2d Cir. 2007) (summary order).[3]  Moreover, a plaintiff's failure to seek medical treatment for injuries is not fatal to a Fourth Amendment excessive force claim.  Phelan v. Sullivan, 541 F. App'x 21, 25 (2d Cir. 2013) (summary order).

Here, there is a genuine issue of material fact as to whether defendants used excessive force against plaintiff, precluding summary judgment on plaintiff's excessive force claim.  On the one hand, defendants claim no force was used in plaintiff's arrest.  On the other hand, although his testimony is somewhat inconsistent, plaintiff claims Officers Saintiche and Lord slammed him to the ground and then punched and hit him; according to plaintiff, officers Rude, Anderson, Canario, Tabachnick, Bloomer, and Perez soon joined in punching and kneeing him.  Moreover, plaintiff testified at his deposition that he suffered scrapes and bruises from the alleged assault.

For the same reason, plaintiff's failure to intervene claims may proceed past summary judgment against the same defendants.  The Federal Rules of Civil Procedure recognize claims may be brought in the alternative, even if they are inconsistent.  See Fed. R. Civ. P. 8(d)(2), (3); see also Polanco v. City of New York, 2018 WL 1804702, at *10 (S.D.N.Y. Mar. 28, 2018) (rejecting "notion that both excessive force and failure to intervene claims may not proceed past summary judgment against the same defendant").

---

[3]  Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this ruling.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Finally, the Court is not persuaded by defendants' argument that plaintiff's claims should be dismissed because plaintiff cannot identify the officers who used force against him or stood by. Plaintiff does identify the officers who he believes assaulted him, and even if he had not done so, at the summary judgment stage, "[a] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." Jeffreys v. Rossi, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003), aff'd sub nom. Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005).

Accordingly, the Court declines to grant summary judgment dismissing plaintiff's excessive force or failure to intervene claims against defendants Saintiche, Lord, Rude, Anderson, Canario, Tabachnick, Bloomer, and Perez.[4]

III. Strip Search

Liberally construed, plaintiff's amended complaint asserts a Fourth Amendment claim arising from his alleged strip search. Defendants—who argue only that they did not perform a strip search—are not entitled to summary judgment on that claim.

"The Fourth Amendment requires an individualized reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest before she may be lawfully subjected to a strip search." Hartline v. Gallo, 546 F.3d 95, 100 (2d Cir. 2008) (internal quotation, citation, and alterations omitted). Both of the counts with which plaintiff was charged

---

[4] Plaintiff states in his declaration in opposition to the motion that Officers Scuadroni, Rivera, and Thomas have nothing to do with his "arrest claims." (Pl. Decl. ¶ 21). Moreover, there are no facts suggesting they were involved in the events giving rise to plaintiff's claim. Cf. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation and citations omitted)). Accordingly, all claims against Officers Scuadroni, Rivera, and Thomas are dismissed.

11

are misdemeanors.  See N.Y. Penal Code §§ 195.05 (Obstructing governmental administration in the second degree), 205.30 (Resisting arrest).

Here, there is a genuine issue of material fact as to whether defendants performed a strip search on plaintiff:  defendants assert they did not perform a strip search on plaintiff; plaintiff asserts they did.   Indeed, plaintiff states he was "strip searched at the police station by one of the arresting male officers before being fingerprinted."  (Pl. Rule 56.1 Statement ¶ 30).  And defendants concede there was no reasonable suspicion that plaintiff was concealing weapons or other contraband.  (Doc. #122 ("Def. Br.") at 6).

Accordingly, plaintiff's Fourth Amendment claim arising from the alleged strip search may proceed against defendants Saintiche, Lord, Rude, Anderson, Canario, Tabachnick, Bloomer, and Perez.

IV.     Qualified Immunity

Defendants argue they are entitled to qualified immunity on plaintiff's false arrest, excessive force, and failure to intervene claims.

The Court agrees only as to the false arrest claim.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Defendants bear the burden of establishing qualified immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (internal citation omitted).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)).

    A.    False Arrest

Defendants are entitled to qualified immunity on plaintiff's false arrest claim.

An officer is entitled to qualified immunity on a false arrest claim if the officer had arguable probable cause to arrest. Arrington v. City of New York, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (internal quotation omitted). Moreover, there is probable cause when "a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity. The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors." Id. (internal quotation and alterations omitted).

"Arguable probable cause to arrest exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Arrington v. City of New York, 628 F. App'x at 49 (internal citation and alterations omitted). "For false arrest claims, the probable

cause inquiry focuses on the facts reasonably believed by the officers at the time of the arrest; even if it later turns out that the officers were mistaken, a mistake of fact would not undermine probable cause so long as their belief was objectively reasonable." Kent v. Thomas, 464 F. App'x 23, 25 (2d Cir. 2012) (summary order). "Whether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant." Fernandez-Bravo v. Town of Manchester, 711 F. App'x 5, 7 (2d Cir. 2017) (summary order). As is relevant here, possession of a firearm is banned by New York Penal Law § 265.01.

Here, there was arguable probable cause for the officers to arrest plaintiff for possession of a firearm. The record is undisputed that (i) a victim called the police reporting she had been threatened by a man with a gun; (ii) communications personnel subsequently described the suspect to the officers on the scene as a black male wearing no shirt, red camouflage shorts or pants, and braids; and (iii) Officers Rude and Saintiche and Sgt. Anderson state they saw plaintiff, who matched that description, traveling in the direction in which the suspect was reportedly heading. Although the officers' reports differ with respect to whether plaintiff was swearing pants or shorts, they are consistent in all other respects, including as to the fact that the item was red camouflage—a particularly distinctive feature of plaintiff's clothing.

As for plaintiff's statement in his declaration that he was wearing a plain black T-shirt and dark navy-blue pants, the Court does not credit it, as it directly contradicts his earlier deposition testimony that he could not recall what he was wearing. A party may not create an issue of fact by "testif[ying] in his deposition that he was unable to remember a particular fact, and then, in response to a summary judgment motion, submitt[ing] an affidavit claiming a recollection of events that would have raised an issue for trial." Kennedy v. City of New York, 570 F. App'x 83, 85 (2d Cir. 2014) (summary order). Moreover, here, plaintiff also admitted at

14

his deposition that he was "probably shirtless" by the time "the incident" was over. (Pl. Dep. at 31).

Accordingly, defendants are entitled to qualified immunity on plaintiff's false arrest claim.

B.      Excessive Force and Failure to Intervene

Defendants also argue they are entitled to qualified immunity on plaintiff's excessive force and failure to intervene claims.

The Court disagrees.

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier v. Katz, 533 U.S. 194, 205 (2001). Qualified immunity applies if the officer's mistake as to what the law requires is reasonable. Id. It does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. Malley v. Briggs, 475 U.S. at 341.

Issues of fact exist as to whether defendants Saintiche, Lord, Rude, Anderson, Canario, Tabachnick, Bloomer, and Perez used excessive force or failed to intervene to prevent the use of excessive force. Were a jury to credit plaintiff's account of his arrest, it could reasonably conclude it was not objectively reasonable for defendants to have used excessive force.

Accordingly, defendants are not entitled to qualified immunity on plaintiff's excessive force or failure to intervene claims.

**CONCLUSION**

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

All claims are dismissed against defendants Scuadroni, Rivera, and Thomas. In addition, all remaining defendants are entitled to qualified immunity on plaintiff's false arrest claim.

15

Plaintiff's remaining claims against defendants Saintiche, Lord, Rude, Anderson, Canario, Tabachnick, Bloomer, and Perez are (i) excessive force; (ii) failure to intervene; and (iii) violation of his Fourth Amendment rights arising out of the alleged strip search.

**The Court will conduct a status conference on September 11, 2019, at 11:30 a.m., at which time the Court will set a trial date and a schedule for pretrial submissions. To conserve resources, to promote judicial efficiency, and in an effort to achieve a faster disposition of this case, the parties, prior to that date, are directed to discuss whether they are willing to consent, under 28 U.S.C. § 636(c), to conduct all further proceedings, including trial, before the assigned Magistrate Judge**.

The Clerk is instructed to (i) terminate the motion (Doc. #106), and (ii) terminate defendants Roman Scuadroni, Ricardo Rivera, and John Thomas.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 7, 2019
      White Plains, NY         SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge